**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ANTONINO EUGENE LYONS**

**Plaintiff**

**Case Number: 10-627C**
**(Judge George Miller)**

**v.**

**UNITED STATES OF AMERICA**

**Defendant.**
_______________________________/

**PLAINTIFF'S RESPONSE TO DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT (DOC. 7)**

**COMES NOW,** the Plaintiff, **ANTONINO EUGENE LYONS,** by and through his undersigned counsel, and responds to the motion for summary judgment (Doc. 7) filed by the United States of America and argues:

## STATEMENT OF ISSUE

The issue before this Court is whether the Plaintiff is entitled to compensation at a statutory maximum rate of $5000.00 per year in jail or $50,000.00 per year in jail under 28 U.S.C. 1495 and 28 U.S.C. 2513.

## ARGUMENT

1. This is an action for damages for unjust conviction and imprisonment pursuant to 28 U.S.C. 1495 and 28 U.S.C. 2513.

2. The Plaintiff, ANTONINO EUGENE LYONS, was prosecuted by the United States of America in the District Court for the Middle District of Florida in 2001 and was originally convicted at a jury trial of several offenses in case number 6:01-cr-000134-GAP-DAB.

3. The Plaintiff, ANTONINO EUGENE LYONS, was imprisoned from August 23, 2001 to May 24, 2004. In all, Mr. Lyons spent 1003 days in jail.

4. Mr. Lyons was ultimately cleared of all charges, with the last of those charges being dismissed by District Court Judge Gregory Presnell on September 30, 2004. A copy of that order is attached to this response to the Government's Motion for Summary Judgment and is incorporated by reference as Exhibit B. In that order, Judge Presnell spends a significant amount of time outlining the unconscionable conduct of Assistant United States Attorney Bruce Hinshelwood in his handling of Mr. Lyons' prosecution. The Plaintiff is attaching other orders relevant to the Government's misconduct and obfuscation in the prosecution of Mr. Lyons. (In addition to Exhibit B, see also Exhibits C and D).

5. Earlier this year, Mr. Lyons' was determined by United States District Court Judge Gregory Presnell to be "actually innocent" of all of the charges brought against him. (Exhibit A). Judge Presnell noted that had the

Government's misconduct had not been discovered, Mr. Lyons would have spent the rest of his life in prison. Exhibit A at page 1.

6. Pursuant to 28 U.S.C. 1495 and 28 U.S.C. 2513, Judge Presnell's certification of actual innocence (Exhibit A) entitles the Plaintiff to compensation for the time he spent in custody.

7. Based on Judge Presnell's certification of actual innocence, the Government in the instant case appropriately concedes liability with regard to the issue of eligibility for compensation under 28 U.S.C. 1495 and 28 U.S.C. 2513 as Mr. Lyons was imprisoned for crimes he did not commit.

8. Based on the Government's concession of liability, the only question for this Court to decide is what level of compensation the Plaintiff is entitled to. The Government's position is they are only liable for $5000.00 per year. They base that argument on the fact that on October 30, 2004, the "Justice for All Act" became law. That Act, among other things, increased compensation for those who are unjustly imprisoned in federal cases from $5,000.00 per year to $50,000.00 per year except in death cases, where the compensation rate was increased from $10,000.00 per year to $100,000.00 per year. The Government argues since Mr. Lyons was released and cleared of charges prior to October 30, 2004, he is entitled to only the $5,000.00 per year.

9. Plaintiff contends it was Congress's intention that the rate of compensation be retroactively applicable and will explain why in a moment. It appears both sides agree this is an issue of first impression. This in part is the fortunate result of the fact there are few valid claims of unjust imprisonment under these two federal statutes. Hopefully, for everyone's sake, cases like Mr. Lyons are the very rare exception. The issue still remaining for this Court to decide is what did Congress intend to do in 2004 about a person in Mr. Lyons' situation when it increased the rate of compensation tenfold. The last time the level of compensation was set for unjust convictions appears to have been around 1940. *See, Cratty v. United States, 83 F.Supp. 897 (SD Ohio ED 1949)(includes a brief discussion of the legislative history of the statutes at issue here).*

10. The Government correctly points out that in the portion of the "Justice for All Act" of 2004 increasing compensation, Congress does not specifically state it intends this increase to be retroactive. But there are other clues available to discern Congress' thinking.

11. The House Judiciary Committee, in its Report on the Justice for All Act of 2004 (Report 108-711) included estimates of the cost of the Act's provisions. (This Report is attached as Exhibit E to this Response). Specifically, at pages 7-8 of the Report, in a section titled "Estimated Cost of

the Federal Government," the Congressional Budget Office estimated the consequences to "direct spending" related to passing the Act would be less than $500,000 annually between 2004 and 2009. On page 8 of the Report, "Direct Spending" was defined as follows:

> "Enacting H.R. 5107 would increase direct spending by raising the maximum compensation from $5,000.00 to $50,000 per year of imprisonment that could be paid to certain persons wrongly convicted of crimes by the federal government. Any such payments would be made from the U.S. Treasury's Judgment Fund and would be considered direct spending. The number of such cases in recent years has been very small, so we do not expect any increase in payments for this purpose to be significant."

It is clear from the CBO's calculations and the Judiciary Committee's inclusion of this language in the Report that the increase in compensation would be immediate and inherently retroactive since the Budgetary consequences would be immediate and steady, as opposed to incrementally larger each year between 2004 and 2009 as would be the case if retroactivity were not intended.

12. The next clue as to Congress' intent is based on a common sense reading of the language of the Act. The title of the legislation as a whole is the "Justice for All Act," which would seem to be all inclusive in terms of the net it seeks to cast. One of its sections deals with protecting the rights of victims. Presumably, Congress did not intend the legislation to better

protect victims of crimes occurring after October 2004 than those who were victims prior to October 2004. Similarly, it defies logic to pass legislation protecting the wrongfully convicted by funding DNA testing in cases where innocent persons can be cleared and then condemning them to the antiquated level of remuneration ($5,000.00) provided by the 1940's version of the legislation. Logically, if DNA clears an individual because of this legislation, those reaping the benefits by definition are a) already incarcerated, and b) likely to be exonerated within a year or so of passage of the legislation. For cases in the prosecution stage, DNA evidence would presumably protect the innocent prior to conviction (at least to the extent it may resolve "who done it" questions where biological trace evidence is left behind by a perpetrator), and therefore the compensation provided by the unjust conviction act would not be needed. In other words, under the Government's argument, DNA would be used to swiftly exonerate the unjustly imprisoned, but provide them with paltry compensation. It is essentially one last indignity imposed upon the person wronged by the system as they exit the prison doors. Under the Government's theory, a person in federal prison since 1994 and exonerated (and hopefully immediately released) in 2005 would be compensated a grand total of $50,000 for his first ten years in prison and either $5,000.00 or $50,000.00

for his final year in prison, depending on to what extreme you wish to take the Government's retroactivity argument.

13. Judge Wyche, in *McLean v. United States, W.D.S.C. 1947, 73 F.Supp 775 at 778* described the goal of the unjust conviction statute thusly:

> "This Act is a remedial act designed by a fair minded government as a means of at least partially righting an irreparable wrong done to one of its citizens. It has the beneficent purpose of attempting to compensate, as well as money can compensate for such an injury, the plaintiff for the loss of his liberty through an error on the part of his government."[1]

Judge Wyche aptly describes the moral goal of the legislation. His use of the word "remedial" also triggers a grey area of the law. In their Motion for Summary Judgment, the Government cites *Landgraf v. USI Film Products, Inc., 511 U.S. 244, 114 S.Ct. 1483 (1994)* as primary authority in support of their belief the legislative change in Governmental liability for unjustly imprisoning its citizens should not be applied retroactively.[2] In footnote 37 of the Court's opinion, there is a brief discussion of the issue of retroactive application of remedial statutes. The Court referenced some cases where remedial changes can be applied to pending cases. Mr. Lyons case was

[1] As the Court can glean from Judge Presnell's Orders, this was no simple "error" by the Government in Mr. Lyons' case. The Government's conduct in prosecuting Mr. Lyons was intentional and ongoing.

[2] The *Landgraf* court holds in part that retroactivity analysis is easiest when Congress simply announces its intentions on the issue in an unequivocal manner, but the failure to do so does not end a court's analysis of the issue. The remainder of the opinion outlines what courts are to do when the answer is not so clear.

pending at the time of the change in the statute in that he had been released from incarceration, but had not as yet obtained a certificate of actual innocence.

14. The Government's analysis misses some significant aspects of *Landgraf*. First, the *Landgraf* Court was addressing legislation dealing with the liability of private employers. Appropriately, they focus on cases dealing with the fact that private employers need to know what their potential liability is and how retroactive applications of monetary damage statutes wreaks havoc with those expectations. Here, the party paying the damages is the Government. As demonstrated earlier, the Government contemplated an immediate impact based on increased liability in its budgetary estimates and in particular its effect on "direct expenditures." Moreover, a holistic review of the Justice for All Act reveals an integrated set of principles designed to punish the guilty, free and appropriately compensate the innocent, and address the increasing role of victim rights within the system. In explaining the need for Title IV of the "Justice for All Act", referred to as the "Innocence Protection Act," the House Judiciary Committee reported:

> "DNA testing has the capacity not only to identify the perpetrators of crimes but also to exonerate the innocent. DNA testing has revealed various wrongful convictions around the country…"

Report of House Judiciary Committee, Report Number 108-711. Despite the Government's contention to the contrary, the DNA testing and compensation portions of the Act are logically inseparable. They are in fact complimentary to each other. Both the DNA funding section and the compensation section are contained under Title IV of the "Justice for All Act," and are referred to in the Bill as the "Innocence Protection Act of 2004." The government's position it was Congress' intent there be no nexus between the concept of increasing efforts toward exonerating the innocent and compensating them when their unjust imprisonment is revealed is disproven by a thorough reading of the Act and the Committee Reports.

15. In *Landgraf, supra.,* the focus was on the ability of the potentially liable party to anticipate its increased liability prospectively. Here, Congress did in fact contemplate increased liability and foresaw such an impact could be immediate and consistent, while still noting the rarity of these type cases. The *Landgraf* Court added this interesting comment to its analysis of retroactivity issues:

> "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical

> clarity. However, retroactivity is a matter on which judges tend to have 'sound…instinct[s],' *see Danforth v. Groton Water Co., 17 Mass. 472, 476, 59 N.E. 1033, 1034 (1901)* (Holmes, J) and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance."

*511 U.S. at 270*. The *Landgraf* Court also mentions the role of "public expectations" in its analysis of retroactive application issues. *511 U.S. at 272*. For the Government's position to prevail in the instant case, this Court would have to believe not only Congress, but the public, would want one of their fellow citizens who has been wrongly held in prison to be compensated at $5,000 – a level of compensation perhaps commensurate with life in the 1940's, but hardly a drop in the bucket in the present time. Most citizens frankly would find even the $50,000 per year to be woefully insufficient.

16. Therefore, it is the Plaintiff's position summary judgment on liability should be granted in favor of the Plaintiff as the Government concedes liability. However, the Government's motion for summary judgment limiting their liability to $5,000.00 per year should be denied and the Court should find that the limit is $50,000.00 per year.

**WHEREFORE**, the Plaintiff prays this Honorable Court grant summary judgment in favor of the Plaintiff on liability and deny the Government's Motion for Summary Judgment to the extent it seeks to limit the Plaintiff's recovery to $5000.00 per year.

Respectfully Submitted

/s/ *Robert R. Berry* .

ROBERT R. BERRY
FLA. BAR NUMBER 714216
5450 VILLAGE DRIVE
VIERA, FLORIDA 32955
(321)504-0321 (OFFICE)
(321)504-0320 (FAX)
LITIGATORS@BELLSOUTH.NET
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF FILING

**I hereby certify** that on December 20, 2010, a copy of the forgoing "Plaintiff's Response to Defendant United States of America's Motion for Summary Judgment (Doc. 7)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

/s/ *Robert R. Berry* .

ROBERT R. BERRY
FLA. BAR NUMBER 714216
5450 VILLAGE DRIVE
VIERA, FLORIDA 32955
(321)504-0321 (OFFICE)
(321)504-0320 (FAX)
LITIGATORS@BELLSOUTH.NET
ATTORNEY FOR PLAINTIFF